## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION:<br><br>PAULA KNECHT, Individually, and as Independent Executrix of the estate of, LARRY W. KNECHT, deceased,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. N14C-08-164 ASB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: December 18, 2019
Decided: March 3, 2020
Corrected: June 11, 2020 (Numeration only)

*Decision on Remand upon Defendant Ford Motor Company's Motion for a New Trial or, in the Alternative, Remittitur,*
**DENIED.**

### MEMORANDUM OPINION AND ORDER

Adam Balick, Esquire, Michael Collins Smith, Esquire, Patrick J. Smith, Esquire, Balick & Balick, LLC, 711 King Street, Wilmington, Delaware 19801; Bartholomew J. Dalton, Esquire, Ipek K. Medford, Esquire, Andrew C. Dalton, Esquire, Michael C. Dalton, Esquire, Dalton & Associates, Cool Spring Meeting House, 1106 West Tenth Street, Wilmington, Delaware 19806; Danny R. Kraft, Esquire, Weitz & Luxenberg, P.C., 700 Broadway, New York, New York 10003, Of Counsel; Attorneys for Plaintiff, Paula Knecht, Individually, and as Independent Executrix of the estate of Larry Knecht, deceased.

Christian J. Singewald, Esquire, Rochelle L. Gumapac, Esquire, White and Williams LLP, Courthouse Square, 600 N. King Street, Suite 800, Wilmington, Delaware 19801, Attorneys for Defendant Ford Motor Company.

**WHARTON, J.**

## I. INTRODUCTION

Plaintiff Paula Knecht is the widow of Larry Knecht, who died at the age of 71 from mesothelioma, an incurable asbestos related disease. During most of his working life, Larry Knecht was an automobile mechanic, owning and operating Knecht Automotive in Los Alamos, New Mexico. In her lawsuit against Ford Motor Company, Mrs. Knecht brought claims of negligence and strict liability, alleging that Mr. Knecht was exposed to asbestos from working with Ford's asbestos-containing brakes and clutches. She sought compensatory and punitive damages. The case went to trial on May 13, 2018. After 16 days of testimony and argument and three days of deliberation, the jury returned its verdict on June 8, 2018. The jury awarded Mrs. Knecht $40.625 million in compensatory damages, for which it found Ford 20% responsible. It also awarded her $1 million in punitive damages. In total Ford's liability to Mr. Knecht was $9.125 million. Ford's appeal to Delaware Supreme Court was unsuccessful with one exception. This Court's denial of Ford's Motion for a New Trial or, in the Alternative, Remittitur was reversed and the case remanded to this Court for it to decide, "whether the jury's compensatory damages verdict of $40.625 million warrants a new trial or remittitur."[1]

## II. FACTUAL AND PROCEDURAL CONTEXT[2]

---

[1] *In re Asbestos Litig.*, 2019 WL 6463089 (Del. Dec. 2, 2019) at *3.
[2] The relevant factual and procedural history of the case is found in this Court's opinion denying Ford's post-trial motions and only is supplemented here as necessary. *See In re Asbestos Litig.*, 2019 WL 413660 (Del. Super. Jan. 31, 2019).

After trial, Ford filed two motions. The first renewed Ford's Motion for Judgment as a Matter of Law under Rule 50(b), previously denied by the Court at the end of Plaintiff's case and again at the conclusion of the evidence.[3] Ford raised six arguments in that motion, primarily focusing on issues related to causation and sufficiency of evidence. Alternatively, Ford sought a new trial. The second motion separately moved for a new trial, or alternatively, remittitur.[4] In its second motion, Ford argued that the jury's verdict was irreconcilably inconsistent and the amount of damages awarded shocked the conscience.[5] The Court denied both motions.[6] The scope of remand is limited to the second motion, specifically the jury's compensatory damages award.

Post-trial, Ford sought remittitur on the grounds that the amount of the verdict was objectively excessive, Plaintiff's counsel improperly incited bias, passion, or prejudice throughout his closing argument, and the admission of cumulative evidence of notice inflamed the jury and likely impacted the verdict.[7] For her part, Plaintiff argued that her counsel's closing argument was entirely proper and that remittitur was unwarranted because there was a fair basis for the compensatory damages award, and that award did not shock the conscience.[8]

---

[3] D.I. 360.
[4] D.I. 363.
[5] *Id.*
[6] *In Re: Asbestos Litig.*, 2019 WL 413660 (Del. Super. Jan. 31, 2019).
[7] D.I. 363.
[8] D.I. 366.

3

## A. Standard and Scope of Review

The rule for determining whether a jury's verdict is excessive is set out as follows:

> A verdict will not be disturbed as excessive unless it is so clear as to indicate that it was the result of passion, prejudice, partiality or corruption; or that it was manifestly the result of disregard of the evidence or applicable rules of law. Otherwise stated: A verdict should not be set aside unless it is so grossly excessive as to shock the Court's conscience and sense of justice; and unless the injustice of allowing the verdict to stand is clear.[9]

## B. Discussion

Ford sought a new trial, or alternatively remittitur, in part, because it claimed that the jury's verdict was the result of bias, passion, or prejudice caused by Plaintiff's counsel during closing argument, and that the admission of cumulative notice evidence inflamed the jury and likely impacted the verdict.[10] The Court found no merit in Ford's argument that the compensatory damages award was rendered by a jury inflamed by impermissible comments made by counsel in summation or by cumulative notice evidence.[11] The Court also found that there was no reason to believe that the jury's verdict otherwise resulted from passion, prejudice, partiality, or corruption; or that the jury manifestly disregarded the evidence or the law.[12]

The jury was able to parse both of the theories of liability

---

[9] *In re Asbestos Litig.*, 2019 WL 6463089 at *2 (Del. Dec. 2, 2019) (citing *Storey v. Castner*, 314 A.2d 187, 193 (Del. 1973)).
[10] Def.'s Br. Mot. New Tr., at 20,26, D.I. 363.
[11] *In re Asbestos Litig.*, 2019 WL 413660 at *8-13 (Del. Super. Jan. 31, 2019).
[12] *Id.*

4

presented by Plaintiff, finding for her on one and against her on the other, and apportion culpability rationally. Mr. Knecht testified that he worked with parts from all three major American automobile manufacturers. All three were assigned equal fault. Mr. Knecht had the least exposure to asbestos from construction work, and the verdict reflected that fact. Finally, the jury placed the greatest responsibility for his mesothelioma on Mr. Knecht, himself. It is difficult to believe that a jury consumed by passion, prejudice, partiality, or corruption, or one which manifestly disregarded the evidence or law could find Mr. Knecht more culpable than Ford.[13]

On remand, after considering the parties' arguments anew, the Court continues to adhere to its view that the jury's verdict was not the product of passion, prejudice, partiality, or corruption for the reasons set forth at some length in its earlier opinion.[14] Moreover, had the jury been so inflamed, it had available to it the option of punitive damages to express any passion, prejudice, partiality, or corruption it might have harbored.

Next, the Court re-considers whether the jury's total award of $40.625 million, and not merely the effective award of $8.125 million, was the result of the jury manifestly disregarding the evidence or the law. Stated another way, was the $40.625 million verdict so grossly excessive so as to shock the Court's conscience and sense of justice so that it would be clearly unjust to allow the verdict to stand? In answering that question, the Court keeps in mind that "[T]his Court interferes with the verdict of the jury only with great reluctance."[15]

---

[13] *Id.*
[14] *Id.*
[15] *Dana Companies, LLC v. Crawford*, 35 A.3d 1110, 1113 (Del. 2011), quoting *Burns v.*

Consistent with New Mexico law, the Court instructed the jury on compensatory damages:

> This lawsuit has been brought by Paula Knecht, individually and on behalf of the surviving beneficiaries of Larry Knecht, who is now deceased.
>
> The law allows damages to be awarded to the surviving spouse and beneficiaries if the death or the related damages described in this instruction were caused by the wrongful act, neglect, or default of another. If you should find for Paula Knecht on the question of liability, you must then fix the amount of money you deem fair and just for the life of Larry Knecht, including in your award compensation for any of the following elements of damages proved by the evidence:
>
> 1. The pain and suffering experienced by Mr. Knecht between the time of injury and death;
>
> 2. The value of Mr. Knecht's life apart from his earning capacity;
>
> 3. The mitigating or aggravating circumstances attending the wrongful act, neglect, or default;
>
> 4. The emotional distress to Paula Knecht caused by the loss of society, companionship, and sexual relations enjoyed with Mr. Knecht;
>
> 5. You may consider the loss to the beneficiaries of other expected benefits that have a monetary value. While the presence or absence of a measurable monetary loss to the beneficiaries is a factor for consideration, damages may be awarded even where monetary loss to the surviving beneficiaries cannot be shown.
>
> The property or wealth of the beneficiaries or of the defendant is

*Del. Coca-Cola Bott. Co.*, 224 A.2d 1234, 1236 Del. 1997).

6

not a legitimate factor for your consideration.

> No fixed standard exists for determining fair and just damages. You must use your judgment to decide a reasonable amount. Your verdict must be based on evidence, not on speculation, guess, or conjecture. You must not permit the amount of damages to be influenced by sympathy or prejudice.[16]

Plaintiff did not introduce any evidence of monetary damages such as medical bills or lost wages. The jury was aware that Mr. Knecht, who was 71 at the time of his death, had a life expectancy of 82.35 years of age.[17] The jury assigned Ford 20% of the negligence leading to Mr. Knecht developing mesothelioma, resulting in the compensatory award of $8.125 million against Ford.

The parties offered citations to damages awards in Delaware and elsewhere in an effort to convince the Court that the award either should or should not shock the Court's conscience.[18] As the Court has noted, while these types of comparisons can be helpful, they are imperfect proxies. Apart from the obvious facts that no two cases are factually identical and people suffer pain and loss of consortium unequally, multiple other factors make comparisons difficult. Such other factors include, but are far from limited to, the jurisdiction whose substantive law applies to the case, the jury instruction on damages of that jurisdiction, whether the plaintiff was deceased or living at the time of trial, the life expectancy of the plaintiff, the length of illness before death if the plaintiff is deceased, the number and degree

---

[16] Jury Instructions, at 40-41, D.I. 352.
[17] *Id.,* at 42.
[18] Def.'s Br. Mot. New Tr., at 16-19., D.I. 363; Plf.'s Br. Opp. Mot. New Tr., at 26-29.

of kinship of plaintiffs seeking damages for loss of consortium, and the closeness of the personal relationships of plaintiffs seeking loss of consortium damages with the deceased.

Assigning compensatory damages for pain and suffering and loss of consortium necessarily is a subjective endeavor. In effect a jury is asked to monetize pain and suffering and loss of consortium, losses which have no price tags or commonly accepted dollar value. New Mexico's jury instruction on damages, much like Delaware's, provides no definite or fixed standard for determining fair and just pain and suffering and loss of consortium damages.[19]

Here the jury knew that Mr. Knecht had been diagnosed with mesothelioma. It also knew, as Mr. Knecht knew, that mesothelioma is always fatal. Mr. Knecht's wife and son knew his diagnosis and the hopelessness of his fate as well. The only uncertainty was when the disease would kill him.

The jury also knew that death by mesothelioma is a particularly awful death, apart from the mental suffering it causes. The jury heard from Dr. Mark Ginsberg about mesothelioma and the course it takes in causing death. In particular Dr. Ginsberg described, through Mr. Knecht's medical records, the progress of the disease in Mr. Knecht. Dr. Ginsberg described mesothelioma as a "miserable, horrible, painful disease."[20] He explained that tumors growing along the pleura, like mesothelioma, invade or irritate the nerves

---

[19] *See,* Del.P.J.I.Civil § 22.1 (2000).
[20] Tr., May 17, 2018 at 97.

8

running from the spine to the front of the body, causing severe pain in all of the nerves running up and down the chest wall.[21] Even with medication, the excruciating pain often is uncontrollable.[22] At some point, once the disease advances, Dr. Ginsberg testified, patients with mesothelioma "suffer horribly because of the loss of lung function. They can't breathe... they develop intractable pain. It's a miserable way to go."[23] Dr. Ginsberg testified that if too much pain medication is given, the patient cannot breathe.[24] Patients cannot eat and the pain is never controlled – a "horrible combination," according to Dr. Ginsberg.[25]

"It was just – it was a very, very difficult time" testified Paula Knecht, who was by her husband's side throughout his illness.[26] The Knechts had been together since high school and had been married almost as long, a total of 52 years.[27] After Mr. Knecht was diagnosed, their life was "very traumatic."[28] Even having his dog on his lap was too painful for Mr. Knecht and he would make the dog lay down beside him.[29] Mrs. Knecht testified that her husband's weight went from around 200 pounds to about 130 during the course of his illness.[30] At some point, even chemotherapy did not help, and Mrs. Knecht watched her

---

[21] *Id.*
[22] *Id.* at 98.
[23] *Id.* at 111-12.
[24] *Id.*
[25] *Id.*
[26] Tr., May 16, 2018 at 58.
[27] *Id.* at 9, 10, 27.
[28] *Id.* at 53.
[29] *Id.* at 54.
[30] *Id.*

9

husband "deteriorate day by day."[31] Eventually, he could not do things for himself. Mrs. Knecht described an incident when Mr. Knecht, who was wearing a diaper, wanted to use the bathroom. She and her daughter-in-law tried to help him by each taking an arm, but "he cried out because it hurt him so badly."[32] It made them feel "horrible."[33] Mrs. Knecht testified "…he was so frail, but it hurt so bad. And I've never seen anybody in so much pain in my life. I would never wish that on anybody."[34] In the end, she signed a do not resuscitate order because, "I couldn't stand it …I couldn't stand to watch him suffer. He suffered an awful lot."[35] Describing her life without Mr. Knecht, she said she lost her "soulmate," her "rock" the family's "rock."[36] In addition, it has been very difficult for her because she does not "have the money … that he brought in"[37] She described her life now as "lonely."[38]

The Court has carefully reconsidered the parties' arguments in light of the direction of the Delaware Supreme Court. It finds that the jury's damage award of $40.625 million, while considerable, was not the result of the jury manifestly disregarding the evidence or the law. Further, the Court finds that the award was not so grossly excessive so as to shock the Court's sense of justice so that it would be clearly unjust to allow the verdict to stand. The

---

[31] *Id.* at 55-56.
[32] *Id.* at 56.
[33] *Id.*
[34] *Id.*
[35] *Id.* at 59.
[36] *Id.*
[37] *Id.* at 60, 61.
[38] *Id.* at 61.

Court has no reason to believe that this jury, which carefully and appropriately followed the Court's instructions in finding the facts and applying the law to those facts in determining liability, abruptly abandoned the law and evidence when it awarded damages. In the Court's view, the jury did not disregard the evidence in assessing compensatory damages, but rather considered the evidence of the unendurable pain and suffering Mr. Knecht sustained, the considerable value of his like to his loved ones, especially Mrs. Knecht, and the terrible emotional distress suffered by Mrs. Knecht. The Court's conscience is not shocked and the Court will not interfere with the jury's considered verdict.[39]

## III.   CONCLUSION

For the reasons set forth in this Memorandum Opinion, on remand, Ford Motor Company's Motion for a New Trial, or in the Alternative Remittitur is **DENIED.**

_____
Ferris W. Wharton, J.

---

[39] The fact that the compensatory damages award was not a round number - $40 million – but, rather $40.65 million, seems to demonstrate that the jury employed a formula or calculation of some sort, lending further support to the conclusion that the award was based on the evidence.